UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THOMAS BINNALL and SUSAN BINNALL,<br>        Plaintiffs,<br><br>v.<br><br>BATH IRON WORKS CORP.,<br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No. 05-cv-11071-REK

PLAINTIFF'S OPPOSITION AND MEMORANDUM IN SUPPORT OF ITS OPPOSITION TO THE DEFENDANT'S MOTION TO DISMISS OR TRANSFER PURSUANT TO FED. R. CIV. P. 12(b)(3)

Now come the plaintiffs, Thomas Binnall and Susan Binnall, to oppose the Defendant's Motion to Dismiss or Transfer Venue. This matter comes before the Court on the Defendant's Motion to Dismiss or Transfer for improper venue pursuant to Fed. R. Civ. P. 12(b)(3), 28 U.S.C. §§ 1391(a), 1404(a), and 1406(a). (Def. Mem. at 1.) The plaintiffs submit this Memorandum of Law in support of their Opposition to the Defendant's Motion to Dismiss or Transfer for improper venue. (See Pls.' Opp'n.)

Summary of Relevant Facts

This is an action in tort for devastating physical and emotional injuries suffered by the plaintiff, Thomas Binnall, when a load of industrial grade steel pipe, used in the construction of military battle ships, was caused to fall from a flatbed trailer onto the plaintiff, causing the plaintiff to sustain massive crush injuries to his lower extremities, along with other injuries leading to the loss of his career as a professional truck driver. (See Pls.' Compl. at ¶¶ 9-16.)

PARKER | SCHEER

At all times relevant to this action, the plaintiff was a resident of Waltham, Massachusetts, and was employed as a professional truck driver by USF Logistics (hereinafter "USF"). (Pls.' Compl. at ¶¶ 1, 9). On the date of the subject incident, the plaintiff was assigned by his employer to drive to Devens, Massachusetts in order to receive a pre-loaded shipment of steel pipe from Ryerson Tull (hereinafter "Ryerson") and to drive the load of pipe from Ryerson's Devens, Massachusetts facility to the Bath Iron Works (hereinafter "BIW") facility located in Bath, Maine, where the pipe was to be off-loaded by agents, servants and/or employees of the defendant BIW. See Exhibit 1 at ¶¶ 11-19. At no time relevant to this action was the plaintiff ever responsible for, nor did the plaintiff participate in, any portion of either the loading or off-loading of the subject pipe. See id. The plaintiff's sole responsibility in the context of the relevant events was to drive the pre-loaded shipment of pipe from Devens, Massachusetts to Bath, Maine, and await off-loading of the subject pipe and other materials from the 50 foot flatbed trailer, tasks to be performed solely by BIW employees. See id.

On July 2, 2002, after departing Devens, Massachusetts, the plaintiff drove the subject load to BIW's Bath facility and followed the required procedure to have the shipment received by BIW in preparation for off-loading by agents, servants and/or employees of BIW. See id. at ¶ 16.

After exiting his truck, and while standing beside his truck waiting for the off-loading process to begin, an agent/servant and/or employee of BIW, operating a fork-lift, suddenly, and without warning to the plaintiff, made contact between the forks of the fork-lift and a section of the steel pipes. See id. at ¶¶ 19-20. Upon contact between the steel load and the steel forks, the load suddenly shifted and came crashing down onto the plaintiff, knocking him onto the ground where the weight of the pipes crushed Mr. Binnall's lower body and caused severe abrasions to his head. See id. at ¶ 20-21. BIW employees rushed to remove the pipes from Mr. Binnall's legs, discovering the plaintiff's broken

PARKER | SCHEER

tibia and fibia protruding through the skin of Mr. Binnall's lower right leg. In shock, Mr. Binnall

waited until the ambulance arrived to transport him to Midcoast Hospital where he underwent

emergency surgery.

<u>Relevant Background to the Filing of this Opposition</u>

Following the events giving rise to the plaintiff's injuries and losses, extensive investigations

were undertaken by the current defendant BIW, as well as by representatives of the plaintiffs, to

uncover the cause of the failure, and to identify all parties who were, in whole or in part, responsible

for the subject failure. In addition to the plaintiffs' allegation that the defendant BIW, was negligent in

the manner, technique, and lack of warnings used to off-load the subject pipe, evidence has also been

obtained suggesting that the subject pipe and other materials loaded on the subject flatbed trailer at the

time of the failure, may have been negligently loaded by agents, servants and/or employees of Ryerson

when originally loaded in Devens, Massachusetts. For this reason, and upon examination of evidence

prepared by agents, servants and/or employees of the defendant BIW, the plaintiffs, *with the express*

*assent of the defendant BIW*, filed a motion with this Court for leave to amend their original

Complaint, to add Ryerson as a direct defendant in this action. The Plaintiffs' Assented to Motion to

Amend Complaint was filed with this Court on July 13, 2005. A decision on that Motion is currently

pending.

Curiously, the defendant's decision to file this Motion, which seeks the dismissal or transfer of

venue of this action from Massachusetts to Maine, was filed contemporaneously with the defendant's

recommendation to the plaintiffs that Ryerson be added as a direct defendant in this action – with full

knowledge that all aspects of Ryerson's alleged responsibility for the plaintiff's injuries occurred in

Massachusetts, by individuals working in Massachusetts. To what extent the proposed defendant,

PARKER | SCHEER

3

Ryerson, is ultimately found to have contributed to the failure which caused or contributed to the plaintiffs' injuries and losses is not currently known. What is known, however, is that Ryerson's involvement in this case, whether as a party defendant or as the employer of a significant number of indispensable witnesses, further establishes Massachusetts as the State with the closest nexus to the case at bar and thus the most appropriate venue.

Argument

**THE COURT SHOULD DENY BIW'S MOTION TO DISMISS OR TRANSFER VENUE BECAUSE MASSACHUSETTS IS THE MOST APPROPRIATE VENUE UNDER BOTH 28 U.S.C. § 1391(a)(2) AND 28 U.S.C. § 1391(c) AND BECAUSE BIW HAS FAILED TO DEMONSTRATE IN ACCORDANCE WITH 28 U.S.C. § 1404(a) THAT MAINE IS THE PREFERRED VENUE EITHER WITH RESPECT TO THE CONVENIENCE OF THE PARTIES AND WITNESSES, OR IN THE INTEREST OF JUSTICE.**

The Court should deny BIW's Motion to Dismiss or Transfer venue because Massachusetts is the most appropriate venue under both 28 U.S.C. § 1391(a)(2) and 28 U.S.C. § 1391(c) and because BIW has failed to demonstrate in accordance with 28 U.S.C. § 1404(a) that Maine is the preferred venue either with respect to the convenience of the parties and witnesses, or in the interest of justice.[1]

---

[1] Section 1391(a) provides:
"A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in…
"(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(a).

Section 1391(c) provides:
"For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c).

Thus, Massachusetts is a proper venue under 28 U.S.C. § 1391(a) as a substantial portion of the events giving rise to the claim occurred in Massachusetts, including what BIW itself alleges was tortious conduct at Ryerson's Massachusetts service location. Furthermore, Massachusetts is a proper venue under 28 U.S.C. § 1391(c) because in filing its 12(b)(6) and 12(b)(3) motions (Defs.' Mot. to Dismiss), BIW waived its 12(b)(2) defense motion to dismiss for lack of jurisdiction of the person, thereby conceding that BIW is subject to personal jurisdiction in the district of Massachusetts. For purposes of venue, § 1391(c) provides that a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. See Atari, 211 F.Supp.2d at 361-62.

PARKER | SCHEER

See 28 U.S.C. § 1391(a) – (c), § 1404(a); Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988);

Atari v. United Parcel Service, Inc., 211 F.Supp.2d 360, 362 (D.Mass 2002).

In analyzing a defendant's motion to transfer venue, a heavy presumption in favor of the

plaintiff's choice of forum exists, and the burden of proving that a transfer is warranted rests with the

defendant. Coady v. Ashcroft & Gerel, 223 F.3d 1, 11 (1st Cir. 2000); Nowak v. Tak How Invest.,

Ltd., 94 F.3d 708, 719 (1st Cir. 1996) (emphasizing that motions to transfer are used to avoid serious

unfairness and the plaintiff's choice of forum will be disturbed only rarely).  The plaintiffs in this case

selected Massachusetts not simply because it is the State in which they both reside (Pls.' Compl. at ¶¶

1, 2) but because Massachusetts is the State in which a substantial portion of the events giving rise to

their claims occurred, including what the defendant itself alleges was tortious conduct on the part of

Ryerson's Massachusetts employees at Ryerson's  Devens, Massachusetts Service Center.  See Exhibit

2 at ¶ 6.

In addition to the foregoing, this Court must also consider several essential factors, including:

(1) the relative convenience of the parties and witnesses, (2) the location of evidence, (3) any

connection between the forum and the issues, (4) the law to be applied, and (5) the state or public

interests at stake. Cianbro Corp. v. Curran-Lavoie, 814 F.2d 7, 11 (1st Cir. 1996); Holmes Group Inc.

v. Hamilton Beach/Proctor Silex, Inc., 249 F.Supp2d 12, 17 (D.Mass 2002); see  Atari, 211 F.Supp.2d

at 362.  In analyzing these factors in light of the facts of the present case, the Court will see that

Massachusetts is the venue that will better further the goals of the federal system in providing the more

just location for the parties and witnesses involved.  See id.

**A.  Venue Should Remain In Massachusetts Because BIW Has Not Met Its Burden In Overcoming The Plaintiff's Choice Of Venue In Massachusetts.**

Any consideration of a motion to transfer venue should begin with an exploration of whether *the moving party* has met its burden in demonstrating that transfer is warranted in light of the plaintiff's choice of venue, and a strong presumption in favor of the plaintiff's choice of forum exists.[2] Atari, 211 F.Supp.2d at 362; see Nowak, 94 F.3d at 719-20; Champion Expos. Servs., Inc. v. Hi-Tech Electric, LLC, 273 F.Supp.2d 172, 180 (D.Mass 2003).  The Supreme Court has repeatedly stated that a plaintiff should not be deprived of the presumed advantages of his or her home jurisdiction except upon a clear showing of facts which either (1) establish such oppressiveness or vexation to a defendant as to be out of all proportion to a plaintiff's convenience, or (2) make trial in the chosen forum inappropriate because of considerations affecting the court's own administrative or legal problems. Nowak, 94 F.3d at 720 (citing Koster v. Lumbermans Mut. Co., 330 U.S. 518, 524 (1947)).  Similarly, the First Circuit has held that a defendant seeking to avoid the costs and burdens of litigating far from home must demonstrate that being subject to jurisdiction in a distant forum is "onerous in a special, unusual, or other constitutionally significant way."  Champion, 273 F.Supp.2d at 180 (quoting Nowak, 94 F.3d at 719).  The moving party defendant has made *no* showing that the plaintiff's filing in Massachusetts was either vexatious, oppressive, or onerous, nor has the moving party presented any evidence that administrative problems exist in Massachusetts.  See (Def. Mem. at 1-12).

The plaintiffs' decision to file suit in Massachusetts was neither vexatious nor oppressive.  See Exhibit 1 at ¶¶ 1-2.  The plaintiffs filed suit in Massachusetts because (1) the plaintiffs both live in

---

[2] The defendant inaccurately asserts that the plaintiff has the burden of establishing that venue is proper; the case that the defendant relies upon for this assertion, Cordis Corp. v. Cardiac Pacemakers, is distinguished from the abundance of applicable and current case law - which explicitly places the burden on the defendant - in that the Cordis holding is narrowly and expressly tailored to patent law venue which is governed by 28 U.S.C § 1400. 599 F.2d 1085, 1086 (1st Cir. 1979).

Massachusetts, (2) a significant portion of the tortious conduct which resulted in the plaintiff's injuries allegedly occurred in Massachusetts, and (3) the majority of the witnesses reside in Massachusetts. See Holmes, 249 F.Supp.2d at 17. Because the defendant has not alleged that the plaintiffs' choice of venue was vexatious or oppressive, its burden must rely solely on a showing that the plaintiffs' chosen forum is inappropriate because of considerations affecting this Court's own administrative or legal problems. See Nowak, 94 F.3d at 720. While BIW is kind enough to voice a general sympathy for the "administrative difficulties flowing from court congestion" within the Massachusetts court system (Def. Mem. at 10), this general assertion is insufficient to overcome the weight granted to the plaintiff's choice of venue, particularly when BIW has offered absolutely no evidence in support of this argument. See Holmes, 249 F.Supp.2d at 18 (dispensing with the defendant's proposed and allegedly more efficient forum, reasoning that there will always be a more efficient court and also recognizing that breakneck speed is not necessarily synonymous with a just result). Additionally, BIW has not expressed that venue in Massachusetts is "onerous in a special, unusual, or other constitutionally significant way." Nowak, 94 F.3d at 719; see e.g. Veryfine Products, Inc. v. Phlo Corp., 124 F.Supp.2d 16, 26 (D.Mass 2000).

Where BIW has (1) failed to establish any oppressiveness or vexation resulting from the Binnall's choice of venue; where (2) BIW has failed to meet its burden in proving this Court's administrative or legal problems in undertaking this case; and where (3) BIW has not alleged unusually onerous or unconstitutional inconveniences which would support the transfer of this case to another jurisdiction, the Court should deny BIW's Motion to Transfer venue to Maine. See Nowak, 94 F.3d at 720; Holmes, 249 F.Supp.2d at 18.

PARKER | SCHEER

7

**B.** **Not Only Has BIW Failed To Meet Its Burden In Overcoming The Binnalls' Choice Of Venue, But BIW Has Failed To Establish That *Any* Of The Remaining Factors Warrant a Transfer From Massachusetts To Maine.**

Not only has the defendant failed to meet its burden in overcoming the plaintiffs' choice of venue, but BIW has failed to establish that *any* of the remaining private and public interest factors warrant a transfer from Massachusetts to Maine. See Cianbro, 814 F.2d at 11. These essential factors that the Court must balance include (1) the convenience of the parties and witnesses, (2) the relative ease of access to sources of proof, (3) the connections between the forum and the issues, (4) the law to be applied, and (5) the state or public interests at stake. Cianbro, 814 F.2d at 11; Holmes, 249 F.Supp.2d at 17; Atari, 211 F.Supp.2d at 362. Taking each of these factors into account, venue in Massachusetts is the favored venue in every instance. See id.

Of these remaining factors, the convenience to the expected witnesses is the most important factor. Workgroup Tech. Corp. v. MGM Grand Hotel, LLC., 246 F.Supp.2d 102, 116 (D.Mass 2003); Atari, 211 F.Supp2d at 362. While BIW suggests that there will be far more witnesses residing in Maine than in Massachusetts, this suggestion fails upon close examination of the witnesses likely to be called for each party. (See Def. Mem. at 9; Fitzgerald Aff. at ¶ 3.) At the urging and written assent of BIW, the plaintiffs amended their complaint to include Ryerson as a defendant because BIW contends that substantial evidence points to Ryerson's loading of the subject flatbed truck as a negligent act that led to Mr. Binnall's injuries. Exhibit 2 at ¶ 6. As such, witnesses who are employees of Ryerson's Massachusetts Service Center, and likely reside in Massachusetts, together with the numerous medical service providers who have treated and continue to treat Mr. Binnall in Massachusetts for his resultant injuries, outnumber the relatively small number of BIW witnesses who may be called to testify in

PARKER | SCHEER

Massachusetts.[3]  See Exhibit 1 at ¶¶ 1-22.  Additionally, the close proximity of the two districts in question discounts any claim for inconvenience, especially when the witness list provided by the defendant includes a medical service provider who treats patients both in Maine and in Massachusetts. (Fitzgerald Aff. at ¶ 3); Exhibit 3;  see Cianbro, 814 F.2d at 11 (upholding on appeal the district court's finding the convenience of parties and witnesses to be inconclusive given the proximity of the federal districts and the claims as to the residency of the majority of the potential witnesses); Veryfine, 124 F.Supp.2d at 26.

BIW's argument that transfer is warranted because Massachusetts is an inconvenient forum for its employees and agents is also without merit because a change of venue to Maine would merely transfer this inconvenience to the other parties. See (Def. Mem. at 9); (Affid. at ¶¶ 2-3); see, e.g. Champion, 273 F.Supp.2d at 180 (where the Court refused to transfer venue because a transfer would only have caused the defendant's inconvenience to be offset by the inconvenience the plaintiff would have faced). As Maine's largest employer, it is unlikely that BIW will suffer any interference with production if three employees and one supervisor are absent while testifying as witnesses in Massachusetts, particularly because the close proximity of the two districts indicates that these employees would be absent for the same amount of time even if the defendant's motion were granted. (Fitzgerald Aff. at ¶ 3). In contrast, the Binnalls, who are physically and financially burdened, will suffer severe inconvenience if they are required to travel to Maine for litigation. See Champion, 273 F.Supp.2d at 180.

---

[3]   The following Massachusetts medical providers are likely to be called as witnesses: Paul Tornetta M.D. (Director of Orthopedic Trauma at Boston Medical Center), William Creevy M.D. (Director of Orthopedic Surgery at Boston Medical Center), Tim Mondale (Newton-Wellesley Hospital PT), Susan Bergman M.D. (Physical Medicine and Rehabilitation at Boston Community Medical Group who currently treats Mr. Binnall for his pain management), and Ingrid Frank CPO.
    The above list *does not* include Ryerson employees from the Devens, Massachusetts center where the pipes were loaded, but the plaintiffs expect to call several witnesses involved in the loading of the pipes and any individuals who were present in Massachusetts at Ryerson when Mr. Binnall picked up the pre-loaded flatbed truck, the names of these several individuals are not yet known as no discovery has been done with regard to the proposed claims against Ryerson.

PARKER | SCHEER

With respect to the "relative ease of access to sources of proof" factor, venue in Massachusetts is once again favored. See Fairview Machine & Tool Co. v. Oakbrook Int'l, Inc., 56 F.Supp.2d 134, 141 (D.Mass 1999). Although BIW suggests that "any investigation of the site of the event will have to take place in Maine," (Def. Mem. at 10), the Court has afforded such arguments little or no weight in an analysis of a motion to transfer venue. See (Def. Mem. at 10); Cianbro, 814 F.2d at 11 (emphasizing that the location of equipment and inventory is an "irrelevant" factor). Furthermore, as BIW and the Binnalls agree, substantial investigation into the loading of the subject flatbed truck at Ryerson's Massachusetts facility is inevitable, thus involving evidentiary equipment and sites in Massachusetts. See Exhibit 2 at ¶ 6; Exhibit 1 at ¶¶ 1-22.

While both Massachusetts and Maine have connections to the facts in this case, a greater number of those connections trace their roots to Massachusetts rather than Maine, thus tilting the connections factor dramatically in favor of venue in Massachusetts. See Holmes, 249 F.Supp.2d at 18. Massachusetts is the State in which the subject flatbed truck was loaded with the subject load by a proposed party to this action and then picked up by Mr. Binnall at Ryerson's Devens, Massachusetts Service Center. See Exhibit 1 at ¶¶ 1-22. Massachusetts is also the State in which Mr. Binnall received most of his medical treatment. Id. Moreover, Massachusetts is the State in which BIW contracted to have businesses and individuals work together to supply material from Massachusetts to BIW, thereby making Massachusetts the center for the business relationship among BIW, Ryerson, USF and the plaintiffs. Id. Thus, Massachusetts clearly has a more substantial connection to the issues at bar despite Maine's being the location where the injury happened to occur following the tortious conduct of BIW employees. Holmes, 249 F.Supp.2d at 18.

While the choice of law to be applied in this case has yet to be adjudicated, it is likely that Massachusetts law will apply, thus weighing the applicable law factor in the Binnall's favor as well. See Sosa v. Alvarez-Machain, 124 S.Ct. 2739, 2753 (2004) (recognizing that tort liability is determined "by the local law of the state which... has the most significant relationship to the occurrence *and the parties,*" including "the place where the relationship, if any, between the parties is centered") (emphasis added, quoting Restatement (Second) of Conflict of Laws § 145 (1969)); Bergin v. Dartmouth Pharm., Inc., 326 F.Supp.2d 179, 182, 183 (D.Mass 2004) (reasoning that even in tort liability the State in which the injury occurred need not be the State whose law applies if another state's law governs the parties' relationship). Thus, because Massachusetts is (1) home to the Binnalls; (2) the alleged setting of at least a significant portion of the tortious conduct; and, (3) the State where the relationship among the parties is centered, Massachusetts law will likely be found to apply. Id. Even if Maine law were to apply, the choice of law factor should have little or no weight in this analysis because Maine law varies only slightly from the applicable Massachusetts law, making the usual auxiliary concerns of jury confusion and conflict of law issues nonexistant. See Atari, 211 F.Supp.2d at 362.

Lastly, an analysis of the state or public interests factor will favor venue remaining in Massachusetts over Maine because Massachusetts' interest in having its resident fairly compensated for injuries occurring due to the negligence of others who were in the course of conducting business in Massachusetts outweighs BIW's argument that Maine has a local interest in trying this case because BIW has a "substantial presence in Maine, currently and historically." (Def. Mem., at 10); see Atari, 211 F.Supp.2d at 365. Thus, the facts in this case differ dramatically from Atari where this Court held that although Massachusetts had a legitimate interest in obtaining justice for its citizen, that legitimate

PARKER | SCHEER

interest was of little weight because the plaintiff's case would not be prejudiced by an action in out-of-state court. See 211 F.Supp.2d at 365. In the case at bar, however, BIW's argument itself suggests that it prefers Maine over Massachusetts because its "substantial presence" will give it an advantage in litigating within its home state, especially in an action against a couple from Massachusetts, thus the Binnall's, at BIW's own assertion, *would be prejudiced* by litigating this action in Maine. See (Def. Mem. at 10).

In their totality, the factors considered by this Court in determining a change in venue should lead this Court to deny BIW's Motion to Dismiss or Transfer venue from the district of Massachusetts to the district of Maine. See Cianbro, 814 F.2d at 11; Workgroup, 246 F.Supp.2d at 116. In analyzing the essential factos herein, including the convenience of the parties and witnesses, the availability of evidence, and the interests of justice, while allowing the proper deference to the Binnall's choice of venue, the Court should allow venue to remain in Massachusetts. Id.

Conclusion

For the reasons set forth above, Mr. and Mrs. Binnall respectfully requests that the Court deny Bath Iron Work's Motion to Dismiss or Transfer for improper venue.

**REQUEST FOR ORAL ARGUMENT**

Counsel believes that oral argument could assist the Court and as such requests a hearing on the motion.

Respectfully submitted,
The Plaintiffs, Thomas Binnall and Susan Binnall,
By their Attorneys,


/s/ Eric J. Parker
_____

Eric J. Parker, Esq. BBO# 549513
Susan M. Bourque, Esq. BBO# 647195
Parker Scheer LLP
One Constitution Center
Boston, Massachusetts 02129
ejp@parkerscheer.com
(617) 886-0500



UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THOMAS BINNALL and<br>SUSAN BINNALL,<br>     Plaintiffs,<br><br>v.<br><br>BATH IRON WORKS CORPORATION,<br>GENERAL DYNAMICS<br>CORPORATION, and<br>RYERSON TULL, INC.,<br>     Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **PLAINTIFFS' FIRST<br>AMENDED COMPLAINT** |

## GENERAL ALLEGATIONS

1. The plaintiff, Thomas Binnall, is a citizen of the Commonwealth of Massachusetts and a resident of Waltham, County of Middlesex.

2. The plaintiff, Susan Binnall, is a citizen of the Commonwealth of Massachusetts and a resident of Waltham, County of Middlesex.

3. At all times relevant hereto, the plaintiffs, Thomas and Susan Binnall were husband and wife.

4. The defendant, Bath Iron Works Corporation ("Bath Iron Works"), is a Maine corporation with a principal place of business located in Bath, Maine.

5. The defendant, General Dynamics Corporation ("General Dynamics"), is a Delaware corporation with a principal place of business located in Falls Church, Virginia.

6. The defendant, Ryerson Tull, Inc. ("Ryerson"), is a Delaware corporation with a principal place of business located in Chicago, Illinois, and operates a "Service Center" located in Devens, Massachusetts.

7. At all times relevant hereto, Bath Iron Works was a wholly owned subsidiary of General Dynamics.

8. Diversity jurisdiction exists pursuant to 28 U.S.C.A. 1332.

PARKER | SCHEER

9.  Personal jurisdiction over Bath Iron Works and General Dynamics exists pursuant
    to M.G.L. c. 223A, §§3(a) and (b).  The plaintiffs' claims arise out of the
    defendants transacting business in the Commonwealth of Massachusetts and
    contracting to supply services or things in the Commonwealth.  The defendants
    also regularly do or solicit business and derive substantial revenue from goods
    used or consumed in the Commonwealth of Massachusetts, and both defendants
    maintain "foreign business certificates" with the Massachusetts Secretary of State.

10. Personal jurisdiction over Ryerson exists pursuant to M.G.L. c. 223A, §§3(a), (b),
    and (c).  The plaintiffs' claims arise out of the defendant transacting business in
    the Commonwealth of Massachusetts, contracting to supply services or things in
    the Commonwealth, and causing tortious injury by an act or omission in the
    Commonwealth.  The defendant also regularly does or solicits business and
    derives substantial revenue from goods used or consumed in the Commonwealth
    of Massachusetts.

## FACTUAL ALLEGATIONS

11. On or about July 2, 2002, the plaintiff was employed as a truck driver by USF
    Logistics ("USF") and assigned to pick up a load of steel pipe at the defendant's
    Devens, Massachusetts facility, and drive the load to Bath Iron Works in Bath,
    Maine.

12. On or about July 2, 2002, the plaintiff arrived at the defendant's facility in
    Devens, Massachusetts, to receive the pre-loaded shipment of steel pipe
    (hereinafter referred to as "the subject load") onto a 50-foot flat-bed trailer
    (hereinafter referred to as "the subject flatbed truck") in preparation for ground
    delivery to Bath, Maine.

13. After arriving at the defendant's facility in Devens, the plaintiff received the pre-
    loaded flatbed truck and drove the subject load from Devens, Massachusetts to
    Bath Iron Works' facility in Bath, Maine.

14. At no time relevant hereto did the plaintiff have any involvement in, or to any
    degree participate in, the loading of the subject materials onto the subject flatbed
    truck, before leaving the defendant's facility in Devens, Massachusetts.

15. The defendant, by and through its agents, servants, and/or employees, was
    responsible for all aspects of the loading of the subject flatbed truck, including the
    subject steel that was to be transported to Bath Iron Works by the plaintiff.

16. On or about July 2, 2002, the plaintiff arrived at Bath Iron Works' facility with
    the subject flatbed and subject load and alerted the receiving department that he
    had a shipment of steel pipe that required off-loading from his trailer.  The pipes
    ranged in length between 20 to 23 feet long and ¾ to 6 inches in diameter.

PARKER | SCHEER

17. Bath Iron Works' receiving department advised Mr. Binnall that the crane operator was not available to off-load his shipment and they would be unable to accept his shipment.

18. Another Bath Iron Works employee then advised Mr. Binnall that he would in fact be able to off-load his shipment of steel pipes using a fork-lift.

19. As requested, Mr. Binnall then returned to his truck and prepared his shipment for off-loading by one or more of Bath Iron Works' agents, servants, and/or employees.

20. As the agents, servants, and/or employees of Bath Iron Works were in the process of off-loading the subject load, the load suddenly shifted, and fell from the truck onto the plaintiff, causing the plaintiff to suffer devastating personal injuries, including life-threatening fractures of his leg, and other serious injuries.

21. As a result of the incident, Mr. Binnall sustained extremely serious and permanent physical injuries, including multiple compound fractures requiring surgical revision, profound emotional distress, pain and suffering, lost wages, and impaired past and future earning capacity.

22. As a direct and proximate result of the defendants' negligence, Mrs. Binnall was caused to sustain the loss of her husband's care, comfort, and society (collectively referred to as "loss of consortium").

## COUNT 1

### CLAIM OF THE PLAINTIFF, THOMAS BINNALL, AGAINST THE DEFENDANT, BATH IRON WORKS CORPORATION, FOR PERSONAL INJURIES AND RELATED LOSSES PREDICATED ON NEGLIGENCE.

23. The plaintiff repeats, realleges and incorporates fully herein paragraphs 1 through 22.

24. On or about July 2, 2002, the plaintiff was a lawful visitor to Bath Iron Works, in Bath, Maine.

25. On or about July 2, 2002, one or more Bath Iron Works' employees negligently off-loaded steel pipe from the plaintiff's 50-foot flat-bed trailer causing the pipes to fall from the trailer bed and directly upon Mr. Binnall's head and legs, causing him to sustain serious and permanent injuries and related losses.

26. As a direct and proximate result of the defendant's negligence, the plaintiff was caused to suffer and did suffer extremely serious personal injuries, including great

PARKER | SCHEER

pain of body and anguish of mind, and incurred substantial medical expenses and related economic losses.

27. As a result of the foregoing, the plaintiff is entitled to recover damages from the defendant, Bath Iron Works Corporation, in an amount deemed fair and reasonable to fully compensate him for all of his incident related injuries and losses, together with interest and costs.

.   **WHEREFORE**, the plaintiff, Thomas Binnall, demands judgment against the defendant, Bath Iron Works Corporation, in an amount deemed fair and reasonable to fully compensate him for all of his incident-related injuries and losses, together with interest and costs.

## COUNT II

### CLAIM OF THE PLAINTIFF, THOMAS BINNALL, AGAINST THE DEFENDANT, GENERAL DYNAMICS CORPORATION, FOR PERSONAL INJURIES AND RELATED LOSSES PREDICATED ON NEGLIGENCE.

28. The plaintiff repeats, realleges and incorporates fully herein paragraphs 1 through 27.

29. On or about July 2, 2002, the plaintiff was a lawful visitor to Bath Iron Works, in Bath, Maine.

30. On or about July 2, 2002, one or more Bath Iron Works' employees negligently off-loaded steel pipe from the plaintiff's 50-foot flat-bed trailer causing the pipes to fall from the trailer bed and directly upon Mr. Binnall's head and legs, causing him to sustain serious and permanent injuries and related losses.

31. As a direct and proximate result of the defendant's negligence, the plaintiff was caused to suffer and did suffer extremely serious personal injuries, including great pain of body and anguish of mind, and incurred substantial medical expenses and related economic losses.

32. As a result of the foregoing, the plaintiff is entitled to recover damages from the defendant, General Dynamics Corporation, in an amount deemed fair and reasonable to fully compensate him for all of his incident related injuries and losses, together with interest and costs.

**WHEREFORE**, the plaintiff, Thomas Binnall, demands judgment against the defendant, General Dynamics Corporation, in an amount deemed fair and reasonable to fully compensate him for all of his incident-related injuries and losses, together with interest and costs.

PARKER | SCHEER

## COUNT III

### CLAIM OF THE PLAINTIFF, THOMAS BINNAL, AGAINST THE DEFENDANT, RYERSON TULL, INC., FOR THE FOR PERSONAL INJURIES AND RELATED LOSSES PREDICATED ON NEGLIGENCE.

33. The plaintiff repeats, realleges and incorporates fully herein paragraphs 1 through 32.

34. On or about July 2, 2002, one or more agents, servants, and/or employees of the defendant negligently loaded steel pipes onto the subject 50-foot flat-bed trailer in preparation for transport from the defendant's facility in Devens, Massachusetts to Bath Iron Works, in Bath, Maine.

35. As a direct and proximate result of the defendant's negligence in the loading of the subject materials onto the subject flatbed truck, the plaintiff was caused to suffer and did suffer extremely serious personal injuries, including great pain of body and anguish of mind, and incurred substantial medical expenses and related economic losses.

36. As a result of the foregoing, the plaintiff is entitled to recover damages from the defendant, Ryerson Tull, Inc., in an amount deemed fair and reasonable to fully compensate him for all of his incident related injuries and losses, together with interest and costs.

**WHEREFORE**, the plaintiff, Thomas Binnall, demands judgment against the defendant, Ryerson Tull, Inc., in an amount deemed fair and reasonable to fully compensate him for all of his incident-related injuries and losses, together with interest and costs.

## COUNT IV

### CLAIM OF THE PLAINTIFF, SUSAN BINNALL, AGAINST THE DEFENDANT, BATH IRON WORKS CORPORATION, FOR THE LOSS OF HER HUSBAND'S CARE, COMFORT, AND SOCIETY (COLLECTIVIELY REFERRED TO AS "LOSS OF CONSORTIUM")

37. The plaintiff repeats, realleges, and incorporates fully herein paragraphs 1 through 36.

38. As a direct and proximate result of the defendant's negligence and her husband's resulting injuries, the plaintiff was caused to sustain a significant loss of consortium.

PARKER | SCHEER

39. As a result of the foregoing, the plaintiff is entitled to recover damages from the defendant, Bath Iron Works Corporation, in an amount deemed fair and reasonable to fully compensate her for all of her incident-related injuries and losses, together with interest and costs.

**WHEREFORE**, the plaintiff, Susan Binnall, demands judgment against the defendant, Bath Iron Works Corporation, in an amount deemed fair and reasonable to fully compensate her for all of her incident-related injuries and losses, together with interest and costs.

## COUNT V

### CLAIM OF THE PLAINTIFF, SUSAN BINNALL, AGAINST THE DEFENDANT, GENERAL DYNAMICS CORPORATION, FOR THE LOSS OF HER HUSBAND'S CARE, COMFORT, AND SOCIETY (COLLECTIVIELY REFERRED TO AS "LOSS OF CONSORTIUM")

40. The plaintiff repeats, realleges, and incorporates fully herein paragraphs 1 through 39.

41. As a direct and proximate result of the defendant's negligence and her husband's resulting injuries, the plaintiff was caused to sustain a significant loss of consortium.

42. As a result of the foregoing, the plaintiff is entitled to recover damages from the defendant, General Dynamics Corporation, in an amount deemed fair and reasonable to fully compensate her for all of her incident-related injuries and losses, together with interest and costs.

**WHEREFORE**, the plaintiff, Susan Binnall, demands judgment against the defendant, General Dynamics Corporation, in an amount deemed fair and reasonable to fully compensate her for all of her incident-related injuries and losses, together with interest and costs.

## COUNT VI

### CLAIM OF THE PLAINTIFF, SUSAN BINNALL, AGAINST THE DEFENDANT, RYERSON TULL, INC., FOR THE LOSS OF HER HUSBAND'S CARE, COMFORT, AND SOCIETY (COLLECTIVIELY REFERRED TO AS "LOSS OF CONSORTIUM")

43. The plaintiff repeats, realleges, and incorporates fully herein paragraphs 1 through 42.

44. As a direct and proximate result of the defendant's negligence and her husband's resulting injuries, the plaintiff was caused to sustain the loss of her husband's full

PARKER | SCHEER

care, comfort, companionship and support, collectively referred to as "consortium".

45. As a result of the foregoing, the plaintiff is entitled to recover damages from the defendant, Ryerson Tull, Inc., in an amount deemed fair and reasonable to fully compensate her loss of consortium, together with interest and costs.

**WHEREFORE**, the plaintiff, Susan Binnall, demands judgment against the defendant, Ryerson Tull, Inc., in an amount deemed fair and reasonable to fully compensate her incident-related loss of consortium, together with interest and costs.

## DEMAND FOR JURY TRIAL

The Plaintiffs claim trial by jury on all Counts.

Respectfully submitted,
The Plaintiffs,
By their Attorneys,

Eric J. Parker, Esq. BBO# 549513
Susan M. Bourque, Esq. BBO# 647195
Parker | Scheer LLP
One Constitution Center
Boston, MA  02129
(617) 886-0500

Dated: 7-11-05

PARKER | SCHEER

# PretiFlaherty

MARK L HALEY
mhaley@preti.com

June 28, 2005

Eric J. Parker, Esq.
Parker/Scheer LLP
One Constitution Center
Boston, MA 02129

RE:    **Binnall v. BIW & General Dynamics**

Dear Eric:

This letter will follow up on our meeting on June 21, 2005 in Boston. As I noted to you at that time, I have virtually no aversion to conducting a mediation in this matter, but believe it is premature at this time as we require significant additional information prior to doing so. This letter will outline the significant points of our discussion.

- You have agreed to voluntarily dismiss G.D. as a defendant. BIW is a wholly owned subsidiary of G.D.; one is a Maine corporation, the other a Delaware corporation. Virtually all of the acts complained of were conducted by BIW employees. You have alleged no issues of bad faith, alter ego etc. which would implicate or require G.D.'s involvement in this action under Maine or Massachusetts law. I, in turn, agree not to interpose any statute of limitations defense at a later date as to any issue arising from the voluntary dismissal of G.D., but reserve all other defenses.

- I have agreed to extend you period to respond to our Motion to dismiss for a period of (30) thirty days from June 27, 2005. Needless to say, I would fully expect the dismissal for G.D. to be effected during this period.

- You have agreed to afford us an IME should we so desire of Mr. Binnall. I would expect to have this accomplished within the next 30-45 days depending on availability of a physician(s).

- You have also agreed to provide us with the latest updated medicals including total specials and any opinion you have obtained with respect to permanent impairment and future surgery. Obviously, it would be critical that we have this information prior to any IME.

1034024.1

**Preti Flaherty Beliveau Pachios & Haley** LLC
One City Center · P.O. Box 9546 · Portland, Maine 04112·9546          207.791.3000  207.791.3111 FAX          Portland · Augusta · Bath · Concord
www.preti.com

PRETI FLAHERTY
Eric J. Parker, Esq.
June 28, 2005
Page 2

- You have also agreed to provide us with your view of Binnall's loss of earning capacity along with accompanying documentation such as tax returns, w-2s etc. In addition, any vocational reports would be helpful as well as an enumeration of benefits Mr. Binnall is receiving in addition to Workers' Compensation such as disability, pension and the like.

- You have confirmed that Binnall was an employee of USF Logistics and that employees of Ryerson loaded the truck and that it was a "no touch" load. We had an extended discussion regarding Ryerson's liability relative to loading the truck. It is our position that the loading of the truck was the principal cause of the accident. The load was stacked above the height of the trailer's sidebars, had individual pipes in the stack and had miscellaneous groups banded together. The photos confirm the fact that the pipes which fell came from above the sidebar and therefore the bands could not have been broken by the forks.

  I will leave it up to you as to whether you want to amend to add Ryerson. As I noted to you, our investigation discloses that Binnall was aware that this was a problematic load.

- Venue – I am presently inclined to let the chips fall on our motion, but will let you know if I change my mind. In any event, it seems clear that Maine law will apply. Cosme v. Whitin Machine Works, Inc. 632 NE2d 832 (Mass 1994).

- Investigative Reports – As soon as I receive approval and confirmation from you regarding non-waiver, I will send to you redacted copies of our investigative reports. As you will see, there appears to be a significant discrepancy between your client's description of the events and the results of our investigation.

I look forward to hearing from you.

Very truly yours,

Mark L Haley

MLH:jnm

1034024.1



• online services • agencies • elected officials • help

Back  |  Home  |  How to Read a Profile



# Massachusetts
# Board of Registration in Medicine
# Physician Profile

## ALLAN P KUONG DO

### I.   Physician Information

(The information in sections I - V has been provided by the physician.)

| | |
|---|---|
| **License Status:** | **Active** |
| **License Issue Date:** | 07/27/1994 |
| **Accepting New Patients:** | Yes |
| **Accepts Medicaid:** | Yes |
| **Primary Work Setting:** | Hospital |
| **Business Address:** | 57 Greylock Road<br>WELLESLEY HILL, MA    02481 |
| **Phone:** | (781) 235-5446 |
| **Translation Services Available:** | None Reported |
| **Insurance Plans Accepted:** | None Reported |
| **Hospital Affiliations:** | Nantucket Cottage Hospital<br>Out of State Hospital |

### II.   Education & Training

| | |
|---|---|
| **Medical School:** | New England College of Osteopathic Medicine |
| **Graduation Date:** | 1993 |
| **Post Graduate Training:** | 6/15/1993-6/30/1994 - NAVAL MEDICAL CENTER, VA  -<br>  TRANSITIONAL INTERN<br>7/1/1997-6/30/1998 - MAINE MEDICAL CENTER  -<br>  RESIDENT:ANESTHESIOLOGY<br>7/1/1998-4/30/2001 - CHICAGO COLL OSTEOPATHIC<br>  MED  - RESIDENT:EMERGENCY MEDICINE |

### III.   Specialty

| | |
|---|---|
| **Area of Specialty:** | Emergency Medicine |
| **ABMS Board Certification:** | Emergency Medicine |

### IV.   Honors and Awards