UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                              )
THOMAS BINNALL and SUSAN      )
BINNALL,                      )
     Plaintiffs               )
                              )
     v.                       )
                              )
                              )   CIVIL ACTION
BATH IRON WORKS CORPORATION,  )   NO. 05-11071-REK
GENERAL DYNAMICS CORPORATION, )
RYERSON TULL, INC.,           )
     Defendants               )
_____)
```

**Memorandum and Order**
October 12, 2005

### I.  Pending Matters

Pending for decision are matters related to the following filing:

(1) Defendants Bath Iron Works Corporation's and General Dynamics Corporation's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6), and to Dismiss or Transfer Pursuant to Fed. R. Civ. P. 12(b)(3) (Docket No. 2, filed May 27, 2005).

### II.  Factual and Procedural Background

On April 29, 2005, plaintiffs Thomas Binnall and his wife, Susan Binnall, initially filed their complaint in the Massachusetts Middlesex Superior Court against defendants Bath Iron Works Corporation ("BIW") and General Dynamics Corporation ("GDC").  (Docket No. 4.) Plaintiffs are residents of Massachusetts.  (Id.)  BIW is a corporation organized under the laws of Maine and has its principal place of business in Maine.  (Docket No. 4.)  GDC is a corporation

organized under the laws of Delaware and has its principal place of business in Virginia. (Id.) BIW is a wholly owned subsidiary of GDC. (Id.) On May 23, 2005, BIW and GDC removed this case to this court because diversity between the citizenship of plaintiffs, BIW, and GDC exists and the amount in controversy exceeds $75,000. (Docket No. 1 at 1.)

On or about July 2, 2002, Mr. Binnall, a USF Logistics truck driver, was assigned to pick up a load of steel pipe at Ryerson Tull, Inc.'s ("Ryerson") facility, in Devens, Massachusetts, and drive the load to BIW in Bath, Maine, for delivery. (Docket No. 6.) Ryerson is a corporation organized under the laws of Delaware, has its principal place of business in Illinois, and a "Service Center" in Devens, Massachusetts. (Id.) Plaintiffs claim that Ryerson, through its agents and employees, was responsible for all aspects of the loading of Mr. Binnall's flatbed truck. (Id.) After arriving at BIW, Mr. Binnall informed BIW's receiving department that he had a shipment of steel pipe on his trailer that required "off-loading." (Id.) A BIW employee or agent allegedly advised Mr. Binnall that Mr. Binnall would be able to off-load his steel pipe shipment using a fork-lift. (Id.) While Mr. Binnall was preparing his shipment for off-loading, the load of steel pipe shifted and fell from the truck onto Mr. Binnall. (Id.)

Mr. Binnall claims that as a result of each defendant's negligence, he sustained serious, permanent, physical injuries, profound emotional distress, pain and suffering, lost wages, and impaired past and future earning capacity. (Id.) Mrs. Binnall claims that as a result of each defendant's negligence and her husband's injuries, she suffered a loss of her husband's consortium. (Id.) On July 13, 2005, plaintiffs moved to amend their complaint to add Ryerson as a defendant asserting against Ryerson the same claims that they asserted against the other two defendants. (Id.) On September 19, 2005, Judge Lasker granted plaintiffs' assented-to motion to

2

amend.  Each plaintiff brings one count against BIW, GDC, and Ryerson, respectively.  (Id.)

On May 27, 2005, defendants BIW and GDC filed a Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6), and to Dismiss or Transfer Pursuant to Fed. R. Civ. P. 12(b)(3), alleging that plaintiffs had no claim against GDC and also that the case should be dismissed against BIW and GDC or transferred because of improper venue.  (Docket No. 2.)  On August 5, 2005, plaintiffs filed an opposition to BIW's and GDC's motion.  (Docket No. 7.)  On August 8, 2005, plaintiffs, BIW, and GDC filed a Joint Stipulation of Dismissal Pursuant to Fed. R. Civ. P. 41(a)(1)(ii) stipulating to the dismissal of all claims against GDC without prejudice and without costs.  (Docket No. 8.)

### III. Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6), and to Dismiss or Transfer Pursuant to Fed. R. Civ. P. 12(b)(3)

**A.     Introduction**

Although BIW and GDC submitted this request as a single motion, I will consider the motion as three separate motions - first, as a motion to dismiss GDC as a defendant pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief may be granted; second, as a motion to dismiss this suit from the District of Massachusetts pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure because of improper venue; and third, in the alternative, if venue is proper in the District of Massachusetts, as a motion to transfer this suit from the District of Massachusetts to the District of Maine pursuant to section 1404(a) of Title 28 of the United States Code on the grounds of *forum non conveniens*.  I will now determine the merits of each motion below.

**B.      Motion to Dismiss GDC Pursuant to Fed. R. Civ. P. 12(b)(6)**

BIW and GDC argue that plaintiffs' claims against GDC are "meritless" since plaintiffs have alleged no facts whatsoever upon which GDC could be held liable for the actions of its subsidiary. (Docket No. 3 at 1.) In these circumstances, plaintiffs, BIW, and GDC have stipulated to dismiss "all claims against [GDC]...without prejudice and without costs." (Docket No. 8 at 1.) Plaintiffs admit, without waiving any rights to add GDC as a defendant in the future, that GDC "may be an unnecessary party to this action [at this time]." (Id.) Plaintiffs' claims against GDC are therefore dismissed without prejudice.

Under Rule 41(a)(1)(ii) of the Federal Rules of Civil Procedure, "[A]n action may be dismissed by the plaintiff without order of court...by filing a stipulation of dismissal signed by all parties who have appeared in the action." A stipulation for dismissal must be an "unequivocal statement by the parties that dismissal is intended." 9 Fed. Prac & Proc. Civ. 2d § 2363 (1995). "A voluntary dismissal by stipulation is effective immediately upon filing and does not require judicial approval." Id.

Here, the parties filed an unequivocal stipulation that plaintiffs would dismiss all claims against GDC "without prejudice," noting that this is plaintiffs' second voluntary dismissal of claims against GDC. (Docket No. 8 at 1.); see Cornell v. Chase Brass & Copper Co., 48 F.Supp. 979, 981 (D.C.N.Y. 1943) (noting that "[t]here is nothing in the Rule to indicate the parties may not...expressly stipulate that the dismissal shall be without prejudice").

Therefore, I do not need to decide whether plaintiffs state a claim against GDC for which relief could be granted in order to rule on this motion to dismiss. Plaintiffs' claims against GDC were dismissed without prejudice on August 8, 2005, in accordance with the parties' joint

stipulation.

**C.    Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(3) for Improper Venue**

   **1. Clarification of Applicable Venue Statute**

As a threshold matter, all of the parties argue points under 28 U.S.C. § 1391, a clearly inapplicable statute to this case.  Specifically, BIW argues that venue is improper in this court under 28 U.S.C. § 1391(a), and that this court should dismiss this case for improper venue.  (Docket No. 3.)  Plaintiffs argue that venue is proper under 28 U.S.C. § 1391(a) and 28 U.S.C. § 1391(c) because "a substantial portion of the events giving rise to the claim occurred in Massachusetts" and, thus, this court should not dismiss this suit for improper venue.  (Docket No. 7 at 4 n.1.)

Section 1391 of Title 28 of the United States Code, however, is a general venue statute that "has no application to this case because it is a removed action."  Polizzi v. Cowles Magazines, Inc., 345 U.S. 663, 665 (1953); see Lambert v. Kysar, 983 F.2d 1110, 1113 n.2 (1st Cir. 1993) (stating that venue of a removed action is not governed by section 1391).  Instead, the venue of removed actions is governed by section 1441(a) of Title 28 of the United States Code.  Section 1441(a) states that:

> [e]xcept as otherwise expressly provided..., any civil action brought in a [s]tate court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

Conversely, relevant parts of section 1391(a) state that

> A civil action that is founded on diversity jurisdiction must

> be **brought** in: (1) a judicial district where any defendant resides...(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.... or (3) a judicial district in which the defendants are subject to personal jurisdiction...

(Emphasis added.) Thus, section 1391(a) limits the district in which an action may be "brought." This action, however, was not "brought" in the district court; it was brought in state court and removed to this court. (Docket No. 4.) Thus, any consideration of any part of the 28 U.S.C. § 1391(a) test, as suggested by each party, is irrelevant to determining proper venue in this case. I will therefore address BIW's motion to dismiss for improper venue under the appropriate statute, section 1441 of Title 28 of the United States Code.

**2. Analysis**

I find that venue is proper in the District of Massachusetts and accordingly deny BIW's motion to dismiss this case for improper venue.

Rule 12(b)(3) of the Federal Rules of Civil Procedure allows a court to dismiss a case because of "improper venue." The procedural analysis for Rule 12(b)(3) challenges is the same as that used for Rule 12(b)(2) challenges for lack of personal jurisdiction. Cashman Equip. Corp. v. Kimmins Contracting Corp., 2004 WL 32961 at *3 (D. Mass. Jan. 5, 2004). Thus, once defendant has challenged venue as improper, the burden is on plaintiff to establish that venue is proper. Cf. Rivera Torres v. Resort World of Orlando, 359 F. Supp. 2d 31, 33-34 (D.P.R. 2005) (stating that since defendants challenged jurisdiction, plaintiffs bore the burden of proving that jurisdiction lay in forum state). The plaintiff must make a *prima facie* demonstration, employing affirmative proof beyond the pleadings, of every fact necessary to establish proper venue. Cashman Equip. Corp., 2004 WL 32961 at *3. "The court, in evaluating whether the plaintiff has

made such a *prima facie* demonstration, accepts plaintiff's properly supported proffers of evidence as true, and views disputed facts in a light favorable to the plaintiff, but need not credit unsupported allegations in the pleadings." Id. at *3 (quoting Boit v. Gar-Tec Products, Inc., 967 F.2d 671, 675 (1st Cir. 1992)).

Thus, generally, a plaintiff has the burden of establishing that venue is proper when faced with an improper venue challenge. In this case, however, plaintiffs have established that venue is proper in this court because they initially filed suit in Middlesex Superior Court. As stated in Section III(C)(1) of this Memorandum and Order, section 1441(a), not section 1391(a), determines the proper venue in this case since it has been removed. Section 1441(a) expressly provides that the proper venue of a removed action is "the district court of the United States for the district and division embracing the place where such action is pending."

In Massachusetts, venue is proper in state court if the action is "brought in the county where one of [the parties] lives..." Mass. Gen. L. ch. 223 § 1 (1985). Plaintiffs reside in Middlesex county and brought suit in Middlesex Superior Court. (Docket No. 1.) The District of Massachusetts is the district embracing Middlesex County, the place where this action was pending. 28 U.S.C. § 101 (1948); JMTR Enterprises, LLC. v. Duchin, 42 F.Supp. 2d 87, 99 (D. Mass. 1999). BIW and GDC removed this action to the District of Massachusetts and, thus, BIW cannot argue now that venue in the District of Massachusetts is improper. See JMTR Enterprises, 42 F.Supp. 2d at 99 (stating that since action was removed from Middlesex Superior Court to District of Massachusetts, defendants could not argue that venue was improper after removal). Therefore, venue is proper in the District of Massachusetts.

Indeed, venue would still be proper in the District of Massachusetts, as a matter of

7

law, whether or not venue was originally proper in state court. See Hollis v. Fla. St. Univ., 259 F.3d 1295, 1300 (11th Cir. 2001) (stating that "it is immaterial [for determining venue in a removed case] that venue was improper under state law when the action was originally filed"); see also Three M Enterprises, Inc. v. Texas D.A.R. Enterprises, Inc., 368 F.Supp.2d 450, 455 (D. Md. 2005) (stating that section 1441(a) governed venue for removed actions, making venue proper as a matter of law).

Therefore, BIW's motion to dismiss is denied.

**D.     Motion to Transfer Pursuant to 28 U.S.C. § 1404(a) for *Forum Non Conveniens***

**1.  Introduction**

BIW alternatively argues that even if venue is proper in Massachusetts, the case should be transferred under section 1404(a) of Title 28 of the United States Code. Plaintiffs argue that this case should not be transferred because "Massachusetts [i]s the [s]tate with the closest nexus to the case at bar." (Docket No. 7 at 4.) I find that transfer is not warranted in this case and thus deny BIW's motion to transfer.

**2.  Legal Standard**

Two bases exist upon which defendants may seek a transfer of venue. Under section 1406(a) of Title 28 of the United States Code, a district court can dismiss a case or transfer it to a different venue if venue is improper in the forum where the case was brought. Conversely, under section 1404(a), a district court in its discretion, for the convenience of parties and witnesses and in the interest of justice, may transfer a case to any other venue where the case might have been brought. Thus, only under section 1404(a), if venue is proper in this district,

does "the court ha[ve] the discretion to transfer to a different venue if it [will be] more convenient and justice [will be] served." Rooney v. Walt Disney World Co., 2003 WL 22937728 at *5 (D. Mass Nov. 25, 2003). "If a district court is the appropriate forum for venue purposes under Section 1441, then a subsequent transfer to another federal district court must be based upon Section 1404(a)..." 14C Fed. Prac & Proc. Juris. 3d § 3726 (1998). Therefore, a motion based on section 1404(a) is a motion based on *forum non conveniens*. Rooney, 2003 WL 22937728 at *5.

The burden of proof in a motion to transfer venue rests with the party seeking transfer because a strong presumption in favor of the plaintiff's choice of forum exists. Coady v. Ashcraft & Gerel, 223 F.3d 1, 11 (1st Cir. 2000); see Associated Fisheries of Me., Inc. v. Evans, 329 F. Supp. 2d 172, 175 (D. Me. 2004) (denying defendant's motion to transfer since defendant had not overcome strong presumption in favor of plaintiff's home forum). In deciding whether this presumption is overcome, the court must consider whether private and public interests clearly point towards trial in the alternative forum. Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255 (1981). I have previously described the Piper private and public interests as follows:

> (1) the convenience of the parties; (2) the convenience of the witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel attendance of unwilling witnesses; (5) the cost of obtaining willing witnesses; and (6) any practical problems associated with trying the case most expeditiously and inexpensively. Piper, 454 U.S. at 241 n. 6, 102 S.Ct. 252 (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)). The public interests include: (1) the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; (2) the avoidance of unnecessary problems in conflicts of laws, or in the application of foreign law; (3) the local interest in having localized controversies

9

>     decided at home; (4) the unfairness of burdening citizens in
> an unrelated forum with jury duty; and (5) administrative
> difficulties flowing from court congestion. Id.

Atari v. United Postal Service, Inc., 211 F. Supp. 2d 360, 362 (D. Mass. 2002). In deciding Atari, I noted that "[n]o definitive guidelines for weighing all these factors have been developed, but the convenience of the witnesses "is '[p]robably the most important factor, and the factor most frequently mentioned.'" Id. at 362 (quoting Brant Point v. Poetzsch, 671 F. Supp. 2, 5 (D. Mass. 1987)). "The court must consider the number of potential witnesses located in both the transferor and the transferee district, the nature and quality of their testimony, and whether the witnesses can be compelled to testify. A party seeking transfer on this basis must, therefore, specify the key witnesses to be called, accompanied by a general statement as to what their testimony will entail." Atari, 211 F. Supp. 2d at 362 (quoting Brant Point, 671 F. Supp. at 3-4). None of these private or public factors is dispositive; instead, I adjudicate motions for transfer "according to an 'individualized, case-by-case consideration of convenience and fairness.'" Stewart Organization v. Ricoh Corp., 487 U.S. 22, 29 (1988) (quoting Van Dusen v. Barrack, 376 U.S. 612, 622 (1964)). Ultimately, the decision to transfer rests in the discretion of the court. Associated Fisheries, 329 F. Supp. 2d at 173.

### 3. Analysis of Private Factors

I am not persuaded that the Piper private factors warrant a transfer from Massachusetts to Maine.

The convenience of the parties factor does not tilt in favor of transfer since it would be a larger inconvenience for plaintiffs (because Mr. Binnall is severely injured, has reduced mobility, and is being treated for his injuries in Massachusetts) to have to travel to Maine than for

BIW and Ryerson to travel to Massachusetts, particularly when Ryerson has a service facility in Massachusetts.  See Roman Martinez v. Potter, 383 F.Supp.2d 300 (D.P.R. 2005) (finding that plaintiff would be more inconvenienced than defendant if case were transferred from Puerto Rico since plaintiff was unemployed and was being treated for schizophrenia in Puerto Rico).

Although BIW argues that its operations will be "serious[ly] disrupt[ed]" if "employees [a]re absent from work to attend an out-of-state trial" (Docket No. 3 at 9), this is not enough to support BIW's contention.  See Villalobos v. North Carolina Growers Ass'n. Inc., 42 F. Supp. 2d 131, 142 (D.P.R. 1999) (stating that court was not persuaded to transfer based on *forum non conveniens* by defendants' contention that their business was "time sensitive" since a trial in either state would be disruptive of normal schedules).  If BIW measures "disruption" by an employee's attendance at a trial, BIW's operations will be "disrupted" whether the trial is in Maine or Massachusetts.
Thus, this factor does not tilt in favor of transferring this case.

Second, the convenience of the witnesses, an extremely important factor, does not tilt convincingly in favor of defendant.  BIW argues that "there will be far more witnesses in Maine" and these witnesses would be able to testify as to the events surrounding Mr. Binnall's injuries.  (Docket No. 9.)  Plaintiffs argue that witnesses that work in Massachusetts at Ryerson's Service Center as well as the "numerous medical service providers who have treated and continue to treat Mr. Binnall in Massachusetts for his injuries, outnumber the relatively small number of BIW witnesses who may be called to testify."  (Docket No. 7 at 8.)  As required, BIW has produced a list of eight potential witnesses that it expects to call in this case and has also stated what each potential witness' relevant testimony entails.  (Docket No. 3.)  Plaintiffs' potential

11

witness list currently totals five medical service providers and does not include Mr. Binnall or the Ryerson employees, likely all residents of Massachusetts or nearby states who loaded the steel pipe that later fell on Mr. Binnall in Maine.

While the number of witnesses to be called to testify in this case is certainly a consideration, it is not dispositive. See McEvily v. Sunbeam-Oster Co., Inc., 878 F.Supp. 337, 345 (D.R.I. 1994) (acknowledging that when passing on a motion to transfer, number of witnesses is not the only consideration for determining convenience). What I value as much, if not more than the quantity of witnesses, is the "nature and quality [of each witness' testimony] in relation to the issues of th[is] case." Id. For example, plaintiffs' potential witnesses include the five medical professionals who have provided Mr. Binnall's treatment in Massachusetts. BIW's potential witnesses include three medical professionals who treated or operated on Mr. Binnall while he was in Maine immediately after the incident. These witnesses will certainly provide important testimony on the issue of damages but they do not get directly to the heart of the matter - what caused the steel pipe to shift and fall on Mr. Binnall. The testimony of all of these witnesses could effectively come in through medical reports or deposition testimony. Plaintiffs' "several" witnesses who saw or loaded the steel pipe at Ryerson and BIW's four potential witnesses who saw or unloaded the steel pipe at BIW, however, will be crucial witnesses because they can help determine the positioning of the steel pipe and consequently the liability, if any, of the defendants.

BIW's witnesses may be a bit more helpful since they saw the steel pipe actually fall on Mr. Binnall, but plaintiffs' witnesses, who likely reside in or very close to Massachusetts, will also be helpful in determining whether the loading of the steel pipe at Ryerson was faulty and,

thus, whether Ryerson was liable. Contra Atari, 211 F.Supp. 2d at 36 (finding that defendant's witnesses' inconvenience "convincingly" tilted in favor of transfer because witnesses were "much larger" in number and would testify on both defendant's liability and plaintiff's post-assault demeanor). Surely BIW will also want to question plaintiffs' witnesses to determine what caused the steel pipe load to fall on Mr. Binnall, and these witnesses are located in Massachusetts. Probably most critical will be Mr. Binnall's testimony of how the steel pipe was loaded, whether he touched the load, and how he was injured since his testimony goes directly to each defendant's potential liability, and Mr. Binnall resides in Massachusetts.

Moreover, courts also consider the financial burden on witnesses when determining convenience to witnesses. See Princess House, Inc. v. Lindsey, 136 F.R.D. 16, 20 (D. Mass. 1991) (noting that loss of income due to absence from work and financial burden of placing children in child care are factors that favor transfer). These significant financial considerations, however, will be negligible for BIW's employee-witnesses, since the distance between the District of Massachusetts and the District of Maine is probably "too slight to create any true inconvenience." Ashmore v. Northeast Petroleum Div. of Cargill, Inc., 925 F.Supp. 36, 40 (D. Me. 1996). "Considering the ease of transportation between Massachusetts and Maine, the length of required travel is not enough to compel this court to uproot this litigation and send it to a neighboring district." Id. Thus, this second factor does not tilt convincingly in favor of transfer.

Third, the relative ease of access to sources of proof does not tilt heavily in favor of transfer. Although BIW employees can show the circumstances surrounding Mr. Binnall's injuries and the unloading of the steel pipe, Ryerson employees will be able to indicate the way in

13

which the steel pipe was loaded. Both actions may have led to Mr. Binnall's injuries, and both are therefore relevant.

BIW argues in its motion to transfer that "any investigation of the site of the event will have to take place in Maine, meaning that sources of proof other than witnesses will be located in Maine," and thus "[p]rivate interests will therefore be better served by venue in Maine" (Docket No. 3 at 10). But counsel for BIW takes the position that "the loading of the truck [in Massachusetts] was the principal cause of the accident," and that Mr. Binnall was not responsible for loading or touching the shipment since the load was a "no touch" load (Docket No. 7, Exh. 2) (emphasis added), indicating that "proof" must also exist within Ryerson's facility in Massachusetts. If the "principal" or primary cause of plaintiff's injuries, according to BIW's counsel, lies within the Devens facility in Massachusetts, surely BIW would also want access to this proof in Massachusetts.

Moreover, BIW is a corporation in Maine with substantially more resources than plaintiffs. I am not convinced that traveling two hours for information would be sufficiently inconvenient for BIW to warrant a transfer to Maine. See Ashmore, 925 F.Supp. at 39-40 (D. Me. 1996) (finding that defendant's argument was not persuasive for transfer to Massachusetts since defendant would only travel a "couple of hours by car" from Massachusetts to Maine, had more resources than plaintiffs, and plaintiffs filed suit in Maine).

Fourth, I do not need to consider the availability of process to compel attendance of unwilling witnesses in determining whether or not to transfer this case since neither party has raised it. See Princess House, 136 F.R.D. at 20 (noting that when neither party raises argument that its non-party witnesses would not or could not make it to transferor forum, courts do not

14

consider unavailability of judicial process).

Fifth, the cost of obtaining willing witnesses is another consideration that does not tilt in favor of transfer. Here, where BIW is a corporation and plaintiffs are individuals, one of whom has lost his current earning capacity because of his injuries, BIW is the party with the stronger financial ability to obtain witnesses for trial in Massachusetts. Galonis v. Nat'l. Broad. Co., 498 F.Supp. 789, 793 (D.N.H. 1980) (stating that court can consider financial strengths of each party in determining a motion to transfer). Thus, with their decreased financial abilities, plaintiffs may lose some of their "live" testimony if they cannot afford the cost of obtaining witnesses for trial in Maine and accordingly, incur additional deposition costs. This result would be unfair. See Beland v. U.S. Dept. of Transp., 2001 WL 274849 at *3 (D. N. H. Feb. 14, 2001) (noting that "ensuring the presence of live witness testimony better serves the interest of justice"). Therefore, this factor does not tilt in favor of transfer.

    **4. Analysis of Public Factors**

I am also not persuaded that the public factors tilt towards transferring this case from Massachusetts to Maine.

First, the interest in having the trial in a forum that is at home with the law that must govern the action is a factor that does not tilt convincingly in favor of transfer in this case. Massachusetts choice-of-law rules would apply in this action. See Forum Financial Group, Ltd. Liability Co. v. President, 173 F.Supp.2d 72, 85-6 (D. Me. 2001) (stating that "[a] federal court that exercises diversity jurisdiction over state-law claims must apply the choice-of-law rules of the state in which it sits"). Under Massachusetts choice of law rules, "tort claims are governed by the law of the state where the alleged injury occurred, unless another state has a more significant

15

relationship to the cause of action." Dunfey v. Roger Williams Univ., 824 F.Supp. 18, 21 (D. Mass. 1993) (emphasis added).

Where, as here, the conduct and the injury may have occurred in different states, the law of the state of the injury will be applied when the injured person has a "settled relationship to [the state where the injury incurred] unless the injured person is domiciled...in the state where the conduct occurred since that state has a greater likelihood of being the state with the more significant relationship." Restatement (Second) of Conflict of Laws § 146, comment (e) (emphasis added). Here, plaintiffs are both Massachusetts residents and part of the alleged conduct that resulted in plaintiffs' injuries occurred in Massachusetts by a company residing in Massachusetts. Certainly, Massachusetts has an interest in determining whether conduct in this state causes injury to its residents. See Cohen v. McDonnell Douglas Corp. et al., 389 Mass. 327, 337 (1983) (stating that state has an interest in determining whether conduct that causes injury in that state to a resident of that state results in liability). Moreover, Massachusetts has an interest in addressing the conduct of corporations operating within Massachusetts. Also, the place where the parties' relationship is centered appears to be in Massachusetts. Thus, the choice of law seems to point towards Massachusetts. See Restatement (Second) of Conflict of Laws § 145(2) (listing contacts to be considered when determining which state has the more significant relationship including place of injury, place of conduct, domicile and residence of the parties, and place of center of parties' relationship).

Even if Maine law were to apply to plaintiffs' claim against BIW, Massachusetts law could still apply to plaintiffs' claim against Ryerson, and a district court sitting in Maine or Massachusetts would therefore have to deal with aspects of each state's laws. See Choate, Hall

& Stewart v. SCA Servs., Inc., 378 Mass. 535, 542 (1979) (stating that "[t]here is nothing unusual about the laws of different [s]tates applying respectively to various phases of a single transaction or incident"). Furthermore, neither party has argued that either Maine or Massachusetts law varies greatly from the other, creating problems with a court's comprehension, interpretation, or application of either state's law. Thus, without ruling on the choice of law at this time, I note that Massachusetts law may well apply or that both Massachusetts and Maine law may simultaneously apply, requiring a district court to be "at home" with both state's laws. Therefore, this factor does not tilt convincingly in favor of transfer.

Second, the local interest in having localized controversies decided at home does not tilt in favor of transfer, although BIW claims that this is a "localized controversy that should be decided in Maine." (Docket No. 3 at 10.) BIW does not show the basis of its contention that this is a "localized controversy." BIW's counsel claims that Ryerson's loading was the "principal cause of the accident" and that "the photos [that were taken of the scene] confirm the fact that the pipes which fell came from above the sidebar and therefore the bands could not have been broken by [BIW's] forks." (Docket No. 7, Exh. 2) (emphasis added). So, it is not shown why this controversy has allegedly evolved from one originating in Ryerson's Massachusetts facility and its employees' loading of the steel pipe into a "localized controversy" that should be decided in Maine. This suit is not shown to be a "localized controversy" in Maine.

As previously explained, interests exist in both states and may even be stronger in Massachusetts. These circumstances undermine defendant's contention that this is a controversy localized in Maine. For example, it would greatly aid plaintiffs, Massachusetts residents, if Ryerson explained how the steel pipe was loaded onto Mr. Binnall's truck. Also, Massachusetts

17

residents will have an interest in the outcome of two Massachusetts plaintiffs' claims against BIW. Also, they will have an interest in whether Ryerson, a company with a Service Center in Massachusetts, was negligent in its loading. See New Amsterdam Cas. Co. v. Estes, 353 Mass. 90, 96 (1967) (stating that "there is a reason for holding a trial in [the community's] view and reach rather than in remote parts of the country where they can learn of it by report only"). Therefore, this factor does not tilt in favor of transfer.

Third, the unfairness of burdening citizens in an unrelated forum with jury duty does not tilt in favor of transfer since jurors from Massachusetts would be from a community with a significant relation to the litigation. See id. at 96 (stating that it is unfair to burden jury from a community that has no relation to litigation).

Finally, no administrative difficulties flowing from court congestion exist in this district that tilt in favor of transferring this case to Maine although, according to BIW, "[t]he case would move more quickly through the court in...Maine." (Docket No. 3 at 10.) How BIW knows that this case will proceed "quickly through the court in...Maine" is not shown. BIW offers no support for this claim in this particular suit other than a reference to "differences in caseload [between Massachusetts and Maine]." Id. In any event, no administrative difficulties exist on my docket and a trial can be scheduled anytime the parties are ready.

### 5. Conclusion

The balance of factors does not favor a transfer of venue to Maine since defendants have not overcome the presumption in favor of plaintiffs' choice of forum. "[T]ransfer is not appropriate where its effect is merely to shift the inconvenience from one party to the

other." <u>Klinerman</u> v. <u>Luxtron Corp.</u>, 107 F.Supp.2d 122, 125 (D. Mass. 2000). Accordingly, BIW's motion for a transfer of venue is denied.

### ORDER

For the foregoing reasons, it is ORDERED:

(1) Defendants Bath Iron Works Corporation's and General Dynamics Corporation's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6), and to Dismiss or Transfer Pursuant to Fed. R. Civ. P. 12(b)(3) (Docket No. 2) is DISMISSED as moot in part and DENIED in part.

       \_\_\_/s/Robert E. Keeton\_\_
          Robert E. Keeton
  Senior United States District Judge